Cuevas *v.* Sutter Well Works

No. 42581      March 11, 1963      150 So. 2d 524

November 19, 1962      146 So. 2d 542

*Floyd & Holleman,* Gulfport, for appellant and cross-appellee.

*Rae Bryant,* Gulfport, for appellees and cross-appellants.

Arrington, J.

This is a workmen's compensation case. The appellant, Lecter Cuevas, claimant below, appeals from a judgment of the Circuit Court of Harrison County affirming the order of the Workmen's Compensation Commission. The employer and carrier cross appeal. The appellant assigns that the court erred in affirming the Commission which found that claimant suffered a pre-existing handicap, disease, or lesion which contributed

to the production of the results following appellant's injury in the amount of fifty percent.

The question presented by this appeal is the construction of Sec. 6998-04, Chap. 277, Laws of 1960, which provides for apportionment of compensation in certain cases, which will be set out hereinafter.

The record discloses that claimant was 49 years of age and had been employed the greater part of his life in doing heavy manual labor. He had been working for his present employer since 1952, and classed as a rough neck on a drilling rig. On October 28, 1960, he was doing routine work around the shop or warehouse and assisted in repairing a car owned by his employer. A short time after lunch, he suffered a heart attack and was carried to the hospital where he remained for 29 days. Dr. Taylor, his physician since 1949, called in Dr. Lake, a specialist in cardio-vascular diseases, to assist him in the treatment of claimant. They diagnosed his attack as acute coronary thrombosis.

Dr. Taylor testified that he had treated claimant since 1949 for the usual minor ailments; that the last time he treated him prior to the heart attack was in November 1958 for a lacerated hand; that he had treated claimant since his release from the hospital on November 26, 1960. He testified as follows:

"He has gotten along fairly well ever since coronary thrombosis, as far as coronary attacks go, but he still occasionally gets a fast chest pain. At the time of his presence in the hospital, we found an elevated blood sugar on him which was not remarkable, but which was highly elevated and we have had him on a mild restriction of sugar intake and he has been on a relatively salt poor diet just because we felt that he . . . we didn't want him to develop any heart failure or anything of that sort. Since he has been out of the hospital, he has had occasional complaints of pain in the shoulders and in the extremities, which he describes as an arthritic

type pain. He complains of pain in his joints. He at no time has had any evidence of any of the bad effects of these anticoagulants drugs such as hemmoride. We have controlled him very carefully and have been running blood studies on him at would be three week intervals and they have been about thirty percent, which is a normal range for his age.''

Dr. Taylor further testified that on his former examinations of claimant he found no indication of heart trouble and that his blood pressure was normal.

Dr. Chas. F. Hoffman, a cardiologist, testified on behalf of claimant and stated that claimant had suffered a coronary occlusion with infarction, and it was his opinion that claimant's work was causally related to his heart attack. On cross-examination, the doctor was asked if claimant had given him a history of being a diabetic. This was the first time this had been mentioned. Upon redirect examination, the doctor was asked if the heart attack claimant had suffered was a manifestation of a diabetic condition, and he answered:

''Well, it has been shown that any unusual stress or strain may bring to the front or bring out the case in which you may find an individual to show a manifestation of diabetes, but it is primarily due to stress and strain, which one will interpret — I'm sure that a heart attack would be interpreted as stress and strain so if he develops it then, that might be the thing that brought it out.''

Dr. Kindall D. Gregory, a cardiologist, testified for the defendants that he examined the claimant in his office on May 22, 1961. He said: ''The funduscopic examination showed moderately advanced retinal arteriosclerosis . . . his blood pressure was 130 over 80 and his pulse was 80. There were no murmurs and his heart was not enlarged . . . his skin was clear; his red and white blood counts were not remarkable; the urinalysis except for a trace of albumen was negative, and his

electrocardiagram showed evidence of a stabilized antero-septal myocardial infarction."

Summing up, his findings were (1) arteriosclerotic heart disease with evidence of a myocardiac infarction, and (2) "diabetes mellitus, history of." He further testified that claimant's work did not cause the attack, and that he definitely had diabetes and arteriosclerosis. On cross-examination, the doctor said that he had given Mr. Bryant, attorney for appellees, a written report on April 29, 1961; that his opinion was based upon some reports from witnesses and doctors. The concluding paragraph of this report is as follows:

"In Dr. Taylor's and Dr. Lake's reports it was noted that they mentioned diabetes. Because of this and because of the lack of any incident, accident or strain concerning Lecter Cuevas' activity on the day of his heart attack and, in fact, because his efforts during that day were much less than normal it is my opinion that he suffered a heart attack due to arteriosclerosis coincidentally during the time he was at work and because of diabetes which would predispose to premature arteriosclerosis and be the cause of this heart attack."

The doctor admitted that this was a medical opinion concerning the case without an examination.

In the medical report of Dr. Lake, who treated claimant while he was in the hospital, question 9 reads as follows: "Is patient suffering from any disease of the heart (present illness), lungs, brain, kidneys, blood, vascular system or any other disabling condition not due to this accident? He answered: "Probably newly discovered diabetes mellitus." This doctor also answered other questions in the report that claimant did not have any physical impairment due to previous accident or disease, and also that his normal recovery had not been delayed. In the report of Dr. Taylor, referred to by the witness, no mention is made in the report of diabetes. He also answered questions that there was no previous

physical impairment due to previous accident or disease and that his recovery had not been delayed for any reason.

We have carefully examined Dr. Taylor's testimony and find that he did not refer to arteriosclerosis or diabetes in his testimony with the exception of the reference of the elevated blood sugar heretofore quoted; that he was not asked these questions by the attorney for the claimant and the appellee's attorney waived cross examination. Upon being questioned by the attorney-referee as to claimant's disability, the doctor testified as follows:

"A. Then you would have to use another comparison and have to use simply a man who had had a heart attack and who did not have diabetes at the same age and in this percentage comparison I would say the estimation would be less correct than in comparing a person who never had a heart attack and if he did not have diabetes with premature arteriosclerosis, his chances for recovery at the present time would probably be 50 percent or more than if he didn't have diabetes — in other words, percentage wise I feel that the fact that he had diabetes and premature arteriosclerosis reduced his recovery by some 50 percent as compared with a person who did not have these conditions.

"Q. Do I understand you then Doctor, that you are attributing 50 percent of the present disability to the diabetes and to the premature advanced arteriosclerosis and another 50 percent to the heart attack itself?

"A. Yes, sir."

Upon the foregoing evidence, the attorney-referee found that on October 28, 1960, claimant was employed at an average weekly wage of $52.76; that he sustained an accidental injury arising out of and in the course of his employment; that he suffered a pre-existing physical handicap, disease or lesion which contributed to the production of the results following the aforesaid injury

in the amount of fifty percent, and ordered that he be paid weekly compensation for temporary total disability in the amount of $17.50, together with the ten percent penalty provided by Sec. 6998-19(e). Two members of the Commission entered a formal order affirming the attorney-referee; one member dissented.

Chap. 277, Laws of 1960, which amended Sec. 6998-04, Code of 1942, provides in part as follows:

"Compensation shall be payable for disability or death of an employee from injury arising out of and in the course of employment, without regard to fault as to the cause of the injury, subject to the following:

"Where a pre-existing physical handicap, disease or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such preexisting physical handicap, disease or lesion contributed to the production of the results following the injury."

██ ██ Under this provision the burden of proof is upon the employer and insurance carrier to establish by a preponderance of the evidence all of the factors stated in the second paragraph of Sec. 4, in order for compensation to be proportionately reduced. These factors are (1) that there must be a pre-existing physical handicap, disease or lesion, (2) this pre-existing condition must be shown by medical findings (3) to be a material contributing factor in the results following injury, and (4) the compensation otherwise payable is reduced by that proportion which the pre-existing condition contributed to the production of the results following the injury. ██ ██ There must be substantial evidence to support the Commission's findings on all of these factors.

██ ██ We hold that there is no substantial evidence to support the Commission's findings on any of these four

elements constituting conditions precedent to proportionate reduction of the compensation otherwise payable under the Act. In short, appellees did not meet their burden of proof in this respect. The evidence does not show by medical findings pre-existing diabetes or arteriosclerosis. Medical findings must have some reasonable and logical basis. Here they were the result of speculation and conjecture. At the most there was no more than a scintilla of evidence to indicate any such pre-existing conditions. The evidence wholly failed to show that such assumed conditions were "a material contributing factor in the results following injury," and therefore there was no basis for a proportionate reduction of the compensation payable to claimant. See 2 Larson, Workmen's Compensation Law (1961), Sec. 59.20; 99 C.J.S., Workmen's Compensation, Sec. 298.

We do not decide any issues under Section 4 except those specifically presented here. We hold only that there was no substantial evidence to support the Commission's findings as a prerequisite to a proportionate reduction of compensation. The amendment to Sec. 4 should be construed in a fair manner, equitably and justly. L. B. Priester & Son v. Dependents of Bynum, (Miss. 1962), 141 So. 2d 246, 142 So. 2d 30. Section 4 places the burden of proof upon the employer and carrier to show the required factors, as a prerequisite to a proportionate reduction of compensation. And the Commission's findings concerning them must be supported by substantial evidence.

In view of our conclusion, we do not reach the cross-appeal, and it is affirmed.

The judgment of the circuit court is therefore reversed and judgment entered here for appellant, together with the ten percent penalty provided for by Sec. 6998-19(e), and six percent interest on each installment of compensation as the same became due, and remanded to the Commission for supervision of the payments due.

Affirmed on cross-appeal; on direct appeal, reversed and judgment entered here for appellant and remanded to the Commission.

*Lee, P. J., and Kyle, Ethridge and Rodgers, JJ.,* concur.

## ON MOTION TO ADVANCE

LEE, P. J.

Appellant has prosecuted an appeal from an order and judgment, denying his claim in part for benefits under the Workmen's Compensation Act. He has made a motion that the cause be advanced for hearing on the docket of this Court on the ground that such a claim is entitled to priority in hearing.

In Plumbing and Heating Service v. Strickland, 49 So. 2d 243 (Miss. 1950), it was held that, while a workmen's compensation claim is a preference case on the docket in the circuit court, "it is not given preference on the docket in this court, nor does it fall within those classes of cases which are given preference here." The holding in the foregoing case was reaffirmed in Hill v. United Timber and Lumber Co., 221 Miss. 473, 73 So. 2d 247 (1954).

Consequently the motion to advance must be, and the same is, hereby overruled.

Motion to advance overruled.

All Justices concur, except Arrington, J., who took no part.