MISSISSIPPI FEDERATED COOPERATIVES, et al. *v.* ROBERTS

No. 42901        February 24, 1964        160 So. 2d 922

*Heidelberg, Woodliff & Franks,* Jackson, for appellants.

*Barnett, Montgomery, McClintock & Cunningham, Pyles & Tucker,* Jackson, for appellee.

LEE, C. J.

B. F. Roberts, 48 years old, on October 17, 1961, while working in the employ of Mississippi Federated Cooperatives, in unloading 50 and 100 pound sacks of lime from a trailer truck, sustained an accidental injury. Compensation benefits were paid to him until December 6, 1961. When payments were stopped, he contended that he had not reached maximum recovery. The evidence on the issue of whether the alleged existing disability was referable to a compensable injury was in sharp conflict. After hearing the matter fully, the attorney-referee ordered the employer and its carrier to pay to Roberts compensation at the rate of $35 per week and to furnish medical benefits, as provided by the compensation act. This order applied only to the question of temporary total disability from December 6, 1961, until such time as maximum recovery is reached when his permanent disability, if any, shall be evaluated. The order was affirmed by a majority vote of the commission, and, on appeal, by the circuit court. The employer and its carrier have prosecuted their appeal to this Court.

The appellants concede that the claimant did sustain an accidental injury in the course of his employment for which they voluntarily paid compensation, as heretofore stated. But they now say that (1) from and after the date of the last payment, if the claimant continued to have any disability, it was not causally related to his original injury of October 17, 1961. They also contend (2) that the legislative act, as amended, Section 6998-01 of the Code, had not been "fairly construed

according to the law and the evidence''. In addition they also contend (3) that the order made no reduction in the amount of compensation because of a pre-existing physical handicap, as provided by Section 6998-04 of the Code, as amended.

The day after the injury, the claimant, at the direction of his employer, went to Dr. John R. Baine who examined and treated him first at home and then in the hospital. In the course of the treatment, Dr. Baine used traction. Finally on November 4, the doctor called in Dr. John Caden as a consultant. Shortly after consultation by these doctors, they discharged the claimant as being able to go back to work. Subsequently Roberts was seen by Dr. Caden on December 5. Previously, on November 8 claimant had sought treatment from Dr. Temple Moore, who diagnosed the trouble as a low back injury, and who has treated him continuously ever since. In Dr. Moore's opinion, the claimant was totally disabled when he was first seen, and that condition was no better at the time of the hearing. For that reason, he said, the claimant is unable to do any substantial work. In other words, actually Dr. Baine prescribed no treatment after Dr. Moore came into the case. Neither Dr. Baine nor Dr. Caden has seen the claimant professionally since the last date, as shown above.

After all of the evidence had been heard, the attorney-referee directed the claimant to undergo an examination by Dr. Andrew W. Sweat. Pursuant thereto, the doctor, after obtaining a full history, made his examination on September 11 and 12, 1962 and he testified elaborately on direct and cross examination. He was of the opinion that the claimant gave him an honest, forthright story to the best of his ability; that he was not malingering; and that Roberts thought it was the truth when he said that he had severe pain. His condition was somewhat bizarre. He could find no connection between his organic condition and pain. He did not go into several fields.

As a private patient, he would advise physiotherapy. The limp was most unusual. He mentioned several possible causes. Roberts does have a mild lumbar strain. There was some muscle spasm as an objective finding, and tenderness in his erector spinae muscles and in the sacroiliac joints too. This will cause scoliosis. In his opinion, the claimant had an injury to the muscles and ligaments of his back, with some strain of the supporting structures. He could have had a hemorrhage in the muscle, and X-ray would not show unless there was calcification. He would not "pass him" in his then condition for employment. He was unable to trace or detect his inability to do heavy work, as referable to his injury. But he appeared to be in pain — a most dramatic experience. He could not say that the mild lumbrosacral strain was not caused from the accident. In fact it might well have done so; and, in his opinion, he did think so. According to the history, Roberts felt pain on the day of his injury.

In summary, all of the doctors, Dr. Baine, Dr. Caden, and Dr. Moore, who saw the claimant immediately or shortly after the accident and has treated him ever since, conceded that he had some physical injury as a result of the accident. Dr. Sweat, who examined the claimant about eleven months later, had a like opinion. Drs. Baine and Caden, although conceding that he had not fully recovered from some disability and recommending light work at first, were of the opinion that the residual of such injury was not referable to the injury. Dr. Moore was of the opinion that the disability was total from its inception and had continued to the date of the trial. Dr. Sweat was of the opinion that the claimant, at the time of his examination, was disabled and not employable. While he could not find a direct connection between his injury and his then physical condition, he was not able to determine the cause, and confessed that the condition is most unusual. In other

words, here was a healthy man, who, according to the evidence, had done hard manual labor all of his life and had never had any trouble of this kind, who received the injury on October 17, 1961. Dr. Sweat testified that, on October 25, 1962, Roberts was in intense pain and in such condition that he was not employable for work. With this conflict in the medical evidence, was the award for temporary total disability contrary to the overwhelming weight of the evidence. The dissenting member of the commission, in his opinion, said ''If the case had ended with the testimony of Dr. Moore, I probably would have voted to affirm the award of the attorney-referee, but there is further evidence in this cause.''

The ''substantial evidence rule'', namely, that this Court will not reverse the order of the commission, if it is supported by substantial evidence has been re-iterated many times. See the collation in Dunn's Mississippi Workmen's Compensation, Section 179 and Supplement.

In O'Neal v. Multi-Purpose Manufacturing Co., 243 Miss. 775, 140 So. 2d 860, the medical evidence, on first blush, was susceptible of perhaps negativing the disability. But, on a thorough analysis, it was clear that it was overwhelming in support of the disability. Consequently, the order of the Commission was reversed and an award was made. But, in the present case, an award was made; and with the case history and sharp dispute in the medical evidence, it cannot be justly said that the award is not supported by substantial evidence. See the cases cited in O'Neal, supra.

The appellants cite the opinion on suggestion of error in Highway Patrol v. Neal's Dependents, 239 Miss. 505, 124 So. 2d 120, 125 So. 2d 544, and Priester v. Bynum, 244 Miss. 185, 141 So. 2d 246, and say that they are in conflict in their interpretation of Section 6998-01, Code of 1942, Rec., as amended, which provides that ''this act shall be fairly construed according to the law and

the evidence''. They further say that, if the law is interpreted in the present case in accordance with that expression it will be encumbent upon the court to reverse and render the judgment.

In Neal's Dependents, supra, the claim originated upon the death of C. N. Neal on February 24, 1958, whereas the legislative amendment took effect on April 23, 1960. The remark in the opinion, seized upon here, recognized that no construction of any kind was called for in the state of the record and anything that the court might say would be obiter dictum.

In Priester v. Bynum, supra, the quotation here involved, was given a rational explanation. That case went into an exhaustive exposition of the meaning and application of the legislative admonition and is such a complete answer that attention is directed to the whole opinion rather than reference to certain excerpts. These legislative words coincide pretty well with that part of the judicial oath, which requires all judges in this state to swear, namely, that they will, ''administer justice without respect to persons, and do equal right to the poor and to the rich''.

■■ ■ This Court does not reverse the finding of fact by a jury or a judge in any case unless, in the opinion of the court, it is contrary to the great weight of the evidence. In the present case, the Court finds that the order of the commission is not against the great weight of the evidence. Consequently, it is unnecessary for further discussion in regard to the meaning of the legislative words here complained about.

■■ ■ On the third proposition, it is sufficient to say that the appellants neither plead nor offered any proof on which to base an apportionment on account of a pre-existing injury. Procedural rule No. 4, was adopted by the commission as provided in Section 6998-43(f) of the Code. That rule in effect provides that, unless affirmative defenses are plead, they shall be deemed waiv-

ed. See also 100 C.J.S., Workmen's Compensation, Section 500, pg. 444.

In Cuevas v. Sutter Well Works, 245 Miss. 478, 150 So. 2d 524, it was held that the burden of establishing the physical handicap, disease or lesion for which a reduction of the compensation may be made is upon the employer and its carrier. It is an affirmative defense to be asserted and proved. In Federal Compress and Warehouse Co. v. Clark's Dependent, 246 Miss. 868, 152 So. 2d 921, the above rule was reaffirmed, but the proof was held to be sufficient to show contribution from the pre-existing condition although the exact extent thereof was not definite. See also Southeastern Construction Co. v. Dodson's Dependents, 247 Miss. 1, 153 So. 2d 276.

From which it follows that the judgment appealed from must be affirmed.

Affirmed and remanded to the Commission.

*Ethridge, McElroy, Rodgers and Patterson, JJ.,* concur.